1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

14

| | |
|---|---|
| THE ESTATE OF CHRISTOPHER VILLARREAL, by and through VICTOR VILLARREAL, in his capacity as Personal Representative of the Estate, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>LEE COOPER, in his capacity as Police Officer for the City of Kennewick Police Department, and as an individual, et al.,<br><br>      Defendants. | NO:  CV-11-5136-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

15

16

17

18

19

20

   Before the Court is Defendants' motion for summary judgment, ECF No. 26.

Oral argument was held on January 16, 2013, in Richland, Washington.  The Court

has reviewed the motion, the memoranda in support and opposition, the parties'

statements of facts, the declarations, the affidavits, all other relevant filings, and is

fully informed.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

This case arises out of an officer-involved shooting in Kennewick, Washington, in which Christopher Villarreal lost his life.  Mr. Villarreal was the driver of a black Lexus that was the subject of multiple 911 calls.  The callers described the Lexus as driving erratically and swerving all over the road.  Officer Lee Cooper and Detective Brian Pochert responded to the calls.  Officer Cooper was driving a police motorcycle while Detective Pochert was driving an unmarked sedan.  Officer Cooper first encountered Mr. Villarreal along West Kennewick Avenue and has described Mr. Villarreal as swerving at him in an attempt to hit him.  Officer Cooper was able to turn into an empty parking stall along West Kennewick Avenue to avoid being hit.

Officer Cooper performed a U-turn and drove up behind Mr. Villarreal as Mr. Villarreal was stopped at the intersection of West Kennewick Avenue and South Washington Street.  Detective Pochert pulled up alongside Officer Cooper. The officers attempted to give commands to Mr. Villarreal who did not initially respond.  Eventually, Mr. Villarreal reached his arm out of the driver side window and pointed south over the top of his vehicle toward a parking lot.  Mr. Villarreal then proceeded slowly to turn right onto South Washington Street and immediately turned right into the parking lot for the Kennewick Irrigation District ("KID"). The parking lot is horseshoe shaped.  Mr. Villarreal proceeded into the portion of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

the horseshoe running north and south.  Officer Cooper followed Mr. Villarreal into the parking lot and stopped behind Mr. Villarreal's vehicle at a slight angle.  At some point, Detective Pochert entered the parking lot and stopped in the northernmost lane at a more perpendicular angle to Mr. Villarreal and to the left rear of Officer Cooper's motorcycle.

The parties dispute the exact order of the following events, but there is no dispute as to their occurrence.  Officer Cooper fired nine shots into Mr. Villarreal's car, killing him.  Mr. Villarreal's car at some point moved backwards and struck Officer Cooper's motorcycle.  Mr. Villarreal's car was placed into reverse, either for a split second while Mr. Villarreal put the car into park, or until Detective Pochert was able to reach into the car and place it into park.  The parties also dispute the distance between Mr. Villarreal's Lexus and Officer Cooper's motorcycle before the Lexus began to move backwards.

Plaintiffs filed this action alleging various causes of action, including an action pursuant to 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment and an action for wrongful death.  Defendants now have moved for summary judgment on multiple grounds, including qualified immunity.

## APPLICABLE LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

matter of law." Fed. R. Civ. P. 56(a).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp.*, 477 U.S. at 325.  The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party.  *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  The evidence

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 4

presented by both the moving and non-moving parties must be admissible.  Fed. R. Civ. P. 56(e).  The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

Defendants have moved for summary judgment on all of Plaintiffs' claims. In their response, Plaintiffs admit that their claims for false arrest, failure to summon aid, and violation of due process are not well founded, and they have withdrawn those claims.  ECF No. 64 at 4-5, 16-17.  The main claim advanced by Plaintiffs is that Defendants violated Mr. Villarreal's Fourth Amendment rights when Officer Cooper shot and killed Mr. Villarreal.  Defendants have moved for summary judgment on the basis that Plaintiffs do not have the evidence to establish such a claim and that Officer Cooper is entitled to qualified immunity.

As the other issues raised in Defendants' motion for summary judgment are subordinate to the Fourth Amendment and qualified immunity issues, the Court will first address the Fourth Amendment and qualified immunity defense and then address the issues of loss of parent/child consortium, municipal liability, wrongful death, and punitive damages as needed.

**Evidentiary Objections**

In their statements of facts, the parties have objected to, or moved to strike, various pieces of evidence filed in support of, or opposition to, this motion. ECF Nos. 65 at 2, 78 at 2-11. The Court has reviewed the record and the objections and has determined that the exclusion or inclusion of the challenged evidence would have no impact on the Court's analysis. Accordingly, the Court declines to rule on the admissibility of the challenged information at this time and will not consider the challenged material in addressing whether any issues of fact remain or whether the movant is entitled to judgment as a matter of law.

**Fourth Amendment and Qualified Immunity**

The doctrine of qualified immunity protects government officials, including police officers, from liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability" and is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, the court must resolve questions of qualified immunity "at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

A police officer is entitled to qualified immunity in a § 1983 action unless (1) the facts, when taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right; and (2) the right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

### Whether a Constitutional Violation Occurred

The use of deadly force is a "seizure" subject to Fourth Amendment inquiry. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The Supreme Court has established that an officer's use of force, including deadly force, violates a Fourth Amendment right if it is excessive under objective standards of reasonableness. *Scott v. Harris*, 550 U.S. 372, 382-83 (2007); *Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir. 2007).

Plaintiffs argue that a deadly force analysis is distinct from an excessive force analysis and that Defendants' failure to specifically address deadly force requires that this Court deny Defendants' motion for summary judgment. However, Plaintiffs are mistaken. The Ninth Circuit has stated explicitly that "there is no special Fourth Amendment standard for unconstitutional deadly force." *Acosta v. Hill*, 504 F.3d 1323, 1234 (9th Cir. 2007) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

When determining whether a particular use of force is "reasonable," courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Garner*, 471 U.S. at 8). The Ninth Circuit applies a three step process to determine reasonableness in use of force cases. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). First, the court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Id.* (quoting *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)). Even when an officer may have been justified in using some force, "the amount [of force] actually used may be excessive." *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

Second, the court must evaluate the government's interest in the use of force under the totality of the circumstances. *Id.* (citing *Graham*, 490 U.S. at 396). In *Graham*, the Supreme Court noted that courts should consider such factors as (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The most important of these factors is whether the suspect posed an immediate threat to the officer's safety or the safety of others. *Smith v. City of Hemet*, 394

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

F.3d 689, 702 (9th Cir. 2005) (en banc).  In addition to the *Graham* factors, the Ninth Circuit has considered the availability of alternative methods of responding to the situation and whether warnings were given prior to the use of force.  *Smith*, 394 F.3d at 701*; Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001).

Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion."  *Glenn*, 673 F.3d at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).  In applying this test, the court must keep in mind the perspective of a reasonable officer on the scene and recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.  The Supreme Court has cautioned against use of the "20/20 vision of hindsight" in evaluating the circumstances facing the officer at the time of the shooting.  *Id.* at 396.

The Ninth Circuit has held repeatedly that summary judgment should be granted "sparingly" in excessive force cases because such cases "nearly always" require a jury to sift through disputed factual contentions, draw inferences, and make credibility determinations. *E.g.*, *Smith*, 394 F.3d at 701.

The parties in this case largely agree on the course of events but differ with regard to important details.  There is no dispute that multiple callers reported that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

Mr. Villarreal was driving erratically on September 14, 2009.  Similarly, testimony is consistent in describing what occurred between the time when Officer Cooper made a U-turn in an attempt to stop Mr. Villarreal at the corner of West Kennewick Avenue and South Washington Street and when Mr. Villarreal entered into the KID parking lot.

Where the parties differ is the characterization of Mr. Villarreal's swerve toward Officer Cooper near West Kennewick Avenue and the activity that occurred in the KID parking lot.  Under the *Saucier* two-step inquiry for qualified immunity, the Court must look at the facts in the light most favorable to the non-movant when determining whether a constitutional violation exists.  *Saucier*, 533 U.S. at 201.  Accordingly, the Court must review these disputed factual matters in the light most favorable to Plaintiffs.

The only evidence in the record regarding Mr. Villarreal's swerve toward Officer Cooper comes from statements by Officer Cooper.  The Ninth Circuit has recognized that officers in deadly force cases are often the only witnesses to certain events because the other possible witness is now dead.  *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).  Because of the danger posed by self-serving testimony in such situations, a district court "may not simply accept what may be a self-serving account by the police officer.  It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story."  *Id.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

Officer Cooper stated that when Mr. Villarreal swerved he was looking right at Officer Cooper, and Officer Cooper believed that Mr. Villarreal was attempting to hit him. ECF No. 29 at 37-38. However, a reasonable fact-finder could conclude that a reasonable officer would have thought that Mr. Villarreal's swerve was not malicious and that he was not trying to hit Officer Cooper, given the fact that 911 phone calls reported that Mr. Villarreal had hit a fence, was "driving extremely erratically," was swerving into other lanes nearly hitting cars, driving in the oncoming traffic lane, and was "swerving all over the road." ECF No. 31 at 5, 8-9, 13, 19;

The various witnesses disagree as to the specifics of the events that occurred in the KID parking lot. Officer Cooper asserts that he parked his motorcycle 45 feet behind Mr. Villarreal. ECF No. 66 at 96. Detective Pochert described the distance as "maybe fifteen to eighteen feet." ECF No. 33 at 16. Civilian witnesses placed Officer Cooper between five and nine feet behind Mr. Villarreal's Lexus. ECF Nos. 70 at 2, 72 at 2.

Officer Cooper and Detective Pochert described Officer Cooper as shooting only after Mr. Villarreal had placed his vehicle in reverse and began accelerating at Officer Cooper. ECF Nos. 29 at 39-40, 33 at 9. Witness Terry Zeiske noted that the vehicle began rolling backward as though it had not been properly placed into park when Officer Cooper began shooting at the vehicle. ECF No. 72 at 2.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

Witness Jody White stated that the vehicle did not move until after shots were fired.  ECF Nos. 70 at 3, 79 at 23.

The first step under *Glenn* is to determine the quantum of force used.  *Glenn*, 673 F.3d at 871.  It is uncontested here that Officer Cooper used deadly force against Mr. Villarreal.

The second step under *Glenn* is to determine the Government's interest in the use of force.  *Id.*  The primary factors in determining the government's interest are the risk of immediate harm posed by the suspect, the severity of the suspect's crimes, and whether the suspect is resisting arrest or trying to flee.

Taken in the light most favorable to Plaintiff, a reasonable jury assessing the risk of harm posed by Mr. Villarreal could discount Officer Cooper's subjective opinion that Mr. Villarreal was intentionally trying to hit him when he swerved. The jury could find credible Mr. White's testimony that Mr. Villarreal slowly and deliberately moved his vehicle into the KID parking lot and stopped, and that Officer Cooper fired into the vehicle before it made any movement toward Officer Cooper.

In light of the fact that some evidence supports a finding that the car was stopped in the KID parking lot and that Mr. Villarreal had stopped the vehicle after signaling in the direction of the parking lot, a reasonable finder of fact could determine that Mr. Villarreal posed no threat to Officer Cooper and was not

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 12

intending to flee.  Similarly, in the light most favorable to Plaintiffs, a reasonable fact-finder assessing the seriousness of Mr. Villarreal's crimes could conclude that his actions constituted only misdemeanor or gross misdemeanor crimes, such as a hit and run of unattended property or driving under the influence.  *See* RCW 46.52.010, 46.61.502.

The third step in *Glenn* is to balance the quantum of force versus the Government's need for the intrusion.  673 F.3d at 871.  As a reasonable finder of fact could conclude that Mr. Villarreal was not attempting to flee and posed no threat to Officer Cooper, the fact-finder also could conclude that deadly force was not warranted.  While there is certainly competing evidence offered by Defendants that could lead a reasonable fact-finder to conclude otherwise, it is not for this Court to resolve those genuine issues of fact.  Accordingly, this matter should proceed to trial where the jury can resolve the factual disputes.

The fact that the vehicle may have been placed into reverse does not change the result.  Mr. White's deposition testimony and affidavit consistently report that shots were fired a split second after Mr. Villarreal's reverse lights came on.  ECF Nos. 70 at 3, 79 at 24.  A reasonable fact-finder could infer that Mr. Villarreal would have had to move the shifter through reverse in order to place the vehicle in park, which may have triggered the reverse lights to flash.  ECF Nos. 33 at 10, 70 at 3.  Given that a jury could discount Officer Cooper's testimony as to the earlier

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 13

swerve, a jury could similarly find that a reasonable officer in Officer Cooper's position would believe that Mr. Villarreal was attempting to park to talk to the officer, rather than attempting to escape, or as Officer Cooper maintains, attempting to hit him.  Accordingly, taken in the light most favorable to Plaintiffs, a reasonable fact finder could find a violation of Mr. Villarreal's Fourth Amendment rights.

### Whether the Right Was Clearly Established

Even where a constitutional violation has occurred, qualified immunity shields an officer from suit when the right was not "clearly established" at the time of the officer's conduct.  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  A right is clearly established if a reasonable officer would understand that his conduct was unlawful under the circumstances that confronted him.  *Saucier*, 533 U.S. at 202; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus "[q]ualified immunity operates . . . to protect officers from the sometimes hazy border between excessive and acceptable force."  *Saucier*, 533 U.S. at 206 (internal quotation omitted).  The inquiry "must be undertaken in light of the specific context of the case."  *Id.* at 201.

However, a police officer can still be on notice that his conduct violates established law "even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Otherwise an officer could escape liability for even the most egregious acts "simply because there was no case on all fours prohibiting that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

particular manifestation of unconstitutional conduct." *Deorle*, 272 F.3d at 1286.
In an "obvious case," general standards may serve the basis for finding that a right
was clearly established. *Brosseau*, 543 U.S. at 199. The use of deadly force is
constitutionally permissible when an officer "has probable cause to believe that the
suspect poses a threat of serious physical harm" to the officer or others. *Garner*,
471 U.S. at 11.

Again, taking the facts in the light most favorable to Plaintiffs, particularly
the testimony of Mr. White, a reasonable fact-finder could determine that Officer
Cooper followed Mr. Villarreal into the parking lot and started shooting at Mr.
Villarreal's vehicle while Mr. Villarreal was attempting to park. Despite the fact
that Plaintiffs have provided no case directly addressing this fact scenario, the
Court concludes that it is clearly a violation of the Fourth Amendment because
nothing in the account most favorable to Plaintiff distinguishes this stop from a
common traffic stop. As a result, issues of fact remain which preclude application
of qualified immunity at this time.

The cases relied upon by Defendants do not counsel a different result. Both
*Wilkinson v. Torres*, 610 F.3d 546, 549 (9th Cir. 2010), and *Whitaker v. Pima
Cnty.*, 640 F. Supp. 2d 1095, 1098 (D. Ariz. 2009), involved cars that, while not
moving, had spinning tires and officers near the vehicles at risk of being hit if the
tires found traction. Accordingly, both *Wilkinson* and *Whitaker* represent cases

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 15

where a defendant was actively attempting to move a vehicle in a manner threatening to police, and where the defendant could have succeeded at any moment.

Both *Brosseau* and *Scott v. Edinburg*, 346 F.3d 752, 757-58 (7th Cir. 2003), involved moving cars.  In *Brosseau*, the defendant admitted that he was driving in a reckless manner, disregarding the safety of others.  543 U.S. at 197.  In *Scott*, the defendant had attempted to run his car into a police officer and then sped off in the vicinity of more than a dozen pedestrians.  346 F.3d at 758.  Both *Brosseau* and *Scott*, therefore, represent cases where a defendant fled from police in a reckless manner in the vicinity of pedestrians.   In short, *Wilkinson*, *Whitaker*, *Brosseau*, and *Scott* are easily distinguishable and are not applicable here.

Defendants argue that *Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005), stands for the proposition that the relevant time frame to address the threat posed by a nearby vehicle is when that vehicle is put into gear.  ECF No. 77 at 13-14.  However, in *Waterman*, the relevant time for the decision to use deadly force was not when the vehicle shifted into gear but was "the instant [the defendant's] vehicle lurched forward."  393 F.3d at 478.  In that case, the vehicle had reached fifteen miles-per-hour during the shooting.  *Id.* at 475.  Nothing in *Waterman* suggests that the brief flash of reverse lights is sufficient to put a reasonable officer in fear that he is about to be struck by a vehicle.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

In sum, the Court concludes that, taking the evidence in the light most favorable to Plaintiffs, there is sufficient evidence for a reasonable fact finder to find that Officer Cooper violated Mr. Villarreal's Fourth Amendment rights in a manner that was clearly prohibited at the time of the violation. Accordingly, Officer Cooper is not entitled to qualified immunity at this time.

Furthermore, in light of the fact that the parties have presented contradictory evidence as to material issues of what occurred in the KID parking lot, the Court finds that there are genuine issues of material fact precluding summary judgment as to liability on the issue of excessive force. Accordingly, such issues must be resolved by the fact-finder at trial. Therefore, as to the issues of liability under the Fourth Amendment and qualified immunity, the Court finds that summary judgment is not appropriate.

**Loss of Parent/Child Consortium**

Defendants moved for summary judgment arguing that Plaintiffs could not bring a claim for loss of parent/child consortium because Officer Cooper did not violate Mr. Villarreal's constitutional rights. As this Court has found that issues of material fact exist on the issue of liability for violation of the Fourth Amendment, the Court cannot grant summary judgment as to the loss of consortium claim.

**Municipal Liability**

The doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)). In other words, municipal liability is not established merely by showing that a municipal employee committed a constitutional tort while within the scope of employment. *See id.* at 478-79. For liability to attach to a municipality, a plaintiff must establish that the wrongful act complained of was somehow caused by the municipality. *Monell*, 436 U.S. at 691-95.

Plaintiffs argue that Kennewick should be held liable because (1) Officer Cooper was acting pursuant to an official policy or longstanding practice or custom in violating Mr. Villarreal's Fourth Amendment rights; (2) Kennewick failed to properly train its police force on the constitutional limits to the use of force; and that (3) Officer Cooper's wrongful acts were "ratified" by an official policy-maker of Kennewick.

### *Official Policy or Longstanding Custom or Practice*

A municipality may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. A plaintiff seeking to impose liability on a municipality due to an official policy must

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

establish the existence of a formal policy pursuant to which the defendant was

acting when he or she violated the plaintiff's rights.  *See Trevino v. Gates*, 99 F.3d

911, 918 (9th Cir. 1996).  "[A]n unjustified shooting by a police officer cannot,

without more, be thought to result from official policy."  *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 123 (1988) (citing *City of Oklahoma City v. Tuttle*, 471

U.S. 808, 821 (1985)).  Plaintiffs have failed to identify a formally adopted policy

of Kennewick that caused the fatal shooting.

Even where no relevant formal policy exists, liability may still attach to a

city based on a longstanding practice or custom.  However, a longstanding practice

or custom "must be so 'persistent and widespread' that it constitutes a 'permanent

and well settled city policy.'"  *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at

691).  Plaintiffs have not identified a longstanding practice or custom that was the

cause of the fatal shooting.  Accordingly, there is insufficient evidence for a finder

of fact to find that Mr. Villarreal's death was caused by an official policy or

longstanding practice or custom of Kennewick.  Therefore, municipal liability may

not be established on this basis.

### Failure to Train

The Supreme Court has recognized that liability may rest with a

municipality where that municipality has failed to train its agents, and the lack of

training causes a deprivation of constitutional rights.  *See City of Canton, OH v.*

*Harris*, 489 U.S. 378, 387 (1989).  However, liability under a theory of inadequate training is limited to those situations in which a city's failure was due to "deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.  Such deliberate indifference requires that a municipality consciously choose to not train its agents.  *Id.* at 389.  The Supreme Court stated that deliberate indifference is shown where the need for "training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.  As an example of such an "obvious" need for training, the Court singled out the fact that law enforcement officers must be trained "in the constitutional limitations of the use of deadly force."  *Id.* at 390 n.10.

Plaintiffs argue that Kennewick fails to adequately train its law enforcement officers as to the constitutional limitations on the use of deadly force.  In support of this argument, Plaintiffs turn to the deposition testimony of Officer Cooper and Kennewick Police Chief Kenneth Hohenberg.  Plaintiffs assert that Officer Cooper was unable to articulate the constitutional limitations on the use of deadly force and Chief Hohenberg failed in his oversight of Kennewick's police training.  ECF No. 64 at 23-24.  However, the evidence relied upon by Plaintiffs cannot support a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

finding that Kennewick failed to train its officers as to the constitutional limitations on the use of deadly force.

At best, Chief Hohenberg's testimony establishes only that he is not aware of the current police academy curriculum or the curriculum of various trainings attended by his officers. *See* ECF No. 66 at 247-48, 251-52. Nothing in Chief Hohenberg's deposition testimony suggests that Kennewick Police Officers are not trained in those standards. In fact, Chief Hohenberg's testimony establishes that every officer of the Kennewick Police Department must complete training at the police academy. ECF No. 66 at 240.

Officer Cooper testified that he was instructed and tested on the constitutional limits on deadly force while at the police academy. ECF No. 66 at 37-38. Accordingly, if any inference may be drawn as to the content of the training received by Kennewick police officers, one must infer that Kennewick police officers are trained as to deadly force. Furthermore, Officer Cooper testified that he was trained on the constitutional limits of deadly force during his firearm training, but he could not remember if such training occurred during all firearm training sessions. ECF No. 66 at 37.

More importantly, when Officer Cooper was asked about the guidelines for using deadly force, Officer Cooper testified that "deadly force is justified if the officer feels if [sic] they or someone else is in imminent danger of serious bodily

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

injury or death." ECF No. 66 at 26-27. This definition accords with the constitutional standard as expressed in Ninth Circuit case law. *E.g. Scott*, 39 F.3d at 914 ("An officer's use of *deadly* force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" (quoting *Garner*, 471 U.S. at 3)).

In order to impose municipal liability on a theory of inadequate training, a plaintiff must show that the deficiency in training actually caused the constitutional violation. *See Canton*, 489 U.S. at 391. As Officer Cooper is aware of the constitutional limitations on the use of deadly force, any deficiency in training on those limitations could not be the cause of a constitutional violation in this case. Accordingly, a reasonable fact-finder could not find that any constitutional violation in this case was the result of inadequate training. Therefore, Plaintiffs lack sufficient evidence to assert municipal liability through a failure to train.[1]

---

[1]The report of D.P. Van Blaricom does not require a different result. Mr. Van Blaricom's report challenges some training practices in the Kennewick Police Department but does not establish that any training deficiencies were so obvious that the failure to train constituted deliberate indifference to constitutional rights. *Canton*, 489 U.S. at 389-90 n.9.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 22

***Ratification***

Isolated constitutional violations may give rise to municipal liability where an agent of the municipal corporation possesses final policymaking authority and "ratifies" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id.* at 1239 (citing *Praprotnik*, 485 U.S. at 127). Whether an agent of a municipality possesses final policymaking authority is a question of state law. *Praprotnik*, 485 U.S. at 124. Whether that agent has ratified the actions of a subordinate is a question of fact. *Iopa*, 176 F.3d at 1238-39.

As an initial matter, the Court notes that while the parties appear to agree that Chief Hohenberg possesses final policymaking authority, and Chief Hohenberg testifies to that fact, ECF No. 66 at 265, the question of policymaking authority is a legal question, not a factual question. *Praprotnik*, 485 U.S. at 124. The Court is unaware of any legal authority investing the Kennewick Police Chief with final policymaking authority. The Kennewick Municipal Code provides that the City Manager may determine the duties of the Chief of Police. Kennewick Municipal Code 2.12.20-30. The Court is not aware of what authority the City

1  Manager has provided to the Chief of Police.  At this time, the Court cannot

2  determine whether Chief Hohenberg possesses final policymaking authority.

3          Assuming for the sake of this motion that Chief Hohenberg possesses final

4  policymaking authority, the Court finds that issues of material fact preclude

5  summary judgment at this time.  Chief Hohenberg has stated explicitly that he

6  believes that all of Officer Cooper's actions were in accordance with department

7  policy and that he supports all of Officer Cooper's actions.  ECF No. 66 at 279.  If

8  a jury were to find that Officer Cooper's actions violated Mr. Villarreal's Fourth

9  Amendment rights, that jury could conceivably accept Chief Hohenberg's

10 statements as a ratification of any unconstitutional actions taken by Officer

11 Cooper.  Therefore, issues of material fact remain and summary judgment must be

12 denied on this issue.

13 **Negligent Investigation**

14         Defendants have moved for summary judgment on the issue of Plaintiffs'

15 negligent investigation claim.  Negligent investigation claims may not be brought

16 against police officers.  *Laymon v. Washington State Dep't of Natural Res.*, 99 Wn.

17 App. 518, 530 (2000) (citing *Fondren v. Klickitat Cnty.*, 79 Wn. App. 850, 862

18 (1995)).  Accordingly, this claim will be dismissed with prejudice.

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 24

**Wrongful Death**

Defendants have moved for summary judgment as to Plaintiffs' state-law wrongful death claim, arguing that Plaintiffs' claim is barred by RCW 4.24.420. That statute bars all claims for damages for wrongful death if the decedent was engaged in the commission of a felony at the time of the occurrence causing the death, and the felony was the proximate cause of the death. RCW 4.24.240. Defendants argue that Mr. Villarreal's swerve toward Officer Cooper on West Kennewick Avenue and his accelerating towards Officer Cooper in the KID parking lot are both actions constituting felony assault under RCW 9A.36.011(1)(a). As with the issue of liability under the Fourth Amendment, there are issues of fact regarding both the swerve and the events in the KID parking lot that preclude summary judgment.

**Punitive Damages**

Punitive damages are available in claims brought pursuant to § 1983 where a defendant acts maliciously, oppressively, or in reckless disregard of the plaintiff's rights. *Dang v. Cross*, 422 F.3d 800, 807-808 (9th Cir. 2005). An act is done maliciously when "'it is accompanied by ill will, or spite, or if it is for the purpose of injuring'" the plaintiff. *Id.* at 807 (quoting Model Civ. Jury Instr. 9th Cir. 7.5 (2004)). "'An act is done in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25

the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.'" *Id.*  An act is done oppressively if it is "'done in a manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity as by misuse or abuse of authority or power or by taking advantage of some weakness or disability or the misfortunes of another person.'" *Id.* at 809 (quoting *Fountila v. Carter*, 571 F.2d 487, 493 (9th Cir. 1978)).

The parties agree that punitive damages may not be awarded against municipalities.  Accordingly, the only issue is whether sufficient facts support an award of punitive damages against Officer Cooper in his individual capacity. Given the issues of material fact as to liability and qualified immunity in this case, the Court concludes that summary judgment is not appropriate on the issue of punitive damages.  The parties may revisit this issue when objecting to jury instructions after evidence has been presented at trial.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' motion for summary judgment, **ECF No. 26**, is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiffs' claims for false arrest, failure to summon aid, violation of due process, and negligent investigation are **DISMISSED WITH PREJUDICE**.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 26

3.  Plaintiffs' claims for municipal liability under the theory that any

constitutional violation was caused by a failure to train or was due to an

official policy or longstanding custom or practice are hereby

**DISMISSED WITH PREJUDICE**.  However, Plaintiffs may pursue a

municipal liability claim under a theory of ratification.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this Order and to

provide copies to counsel.

**DATED** this 6th day of March 2013.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 27